### CALEB SMITH *vs.* THE MANUFACTURERS INSURANCE COMPANY

When an injury to an insured vessel can be repaired at an expense less than her value when repaired, the assured cannot recover for a total loss without abandoning to the underwriters.

When an insured vessel is broken up and sold in consequence of an injury received, without abandonment to the underwriters, and a suit is brought on the policy, the proceeds of the materials sold are to be deducted from the sum which the assured would be entitled to recover if there had been an actual total loss of the vessel.

ASSUMPSIT on a policy of insurance, dated September 19th 1837, upon the brig George, at and from Salem to port or ports of discharge and lading in Brazil, not south of Rio Janeiro, and at and from thence to her port of destination in the United States. The brig was valued in the policy at $7000, and the plaintiff owned one half of her. He claimed as for a total loss of his half. The loss was alleged, in different counts of the plaintiff's declaration, to have been occasioned by different causes; as stated in the opinion of the court. Trial before *Shaw*, C. J.

Most of the evidence, which bore upon the points hereinafter decided, is stated in the opinion of the court. The remainder of that evidence was, in substance, as follows : The brig sailed from Salem on the 24th of September 1837, and proceeded to Pernambuco, thence to Bahia, and thence to Rio Janeiro, where she arrived on the 12th of December 1837, and where she was surveyed and condemned, and her hull, sails, rigging, boats, &c., were divided into various lots and sold at auction. The proceeds of the sale were retained by the owners. The brig could have been repaired at Rio, at an expense less than her value when repaired ; and there was no abandonment to the defendants.

The jury returned a verdict for the plaintiff for $4235, and stated, upon being inquired of by the court, that they had found for a total loss, without allowing any thing for salvage. The defendants thereupon filed a motion that the verdict be set aside, and a new trial granted. Among the numerous causes assigned for this motion, were these : " Because the finding of a verdict for the plaintiff, at all, is against law and the evidence, and the weight of evidence in said case." " Because the said verdict, in finding a total loss, is against the evidence and the weight of evidence in the case."

*Fletcher & E. D. Sohier,* for the defendants.

*Crowninshield,* for the plaintiff.

SHAW, C. J.* The plaintiff claimed for a total loss on a policy made on the brig George of Salem, valued at $7000, he being owner of one half.

In order to recover, it became necessary for the plaintiff to prove a loss, by some of the perils insured against, after the 19th of September 1837, when the policy was executed and first attached. In the early stages of the case, the plaintiff, by his declaration, relied upon a loss by perils of the sea after the departure of the brig from Salem, and in the course of the voyage ; but subsequently he filed a declaration, setting forth a loss by stranding in Salem harbor, after the inception of the risk, and before the departure of the brig on her voyage ; and this was

---

* *Hubbard,* J. did not sit in this case.

the only ground relied upon at the trial. This ground was, that in the night before the brig intended to set sail on her voyage, in September, the brig drifted from her anchorage in Salem, and, dragging her anchor, ran on to the flats on the southeasterly side of the harbor, grounded there, and lay one tide, and at the next high water was got off, and soon after went to sea; it not being known, before she sailed, that any material damage was done to her by that accident. There was great conflict of evidence, upon the question of fact, whether the damage, found at Rio Janeiro to have been done at some time to the ship's side and bottom, was done at that time or not. On the part of the plaintiff, there was evidence tending to show that it was discovered at Rio; that some of the planks were found started up; that several timbers were broken, and the brig damaged; and he contended that the stranding in Salem harbor was an adequate cause, and that no other adequate cause was shown. On the contrary, evidence was offered by the defendants, in connexion with that furnished by the plaintiff, tending to show that the brig had met with accidents, on former occasions, to which the appearances found at Rio might be attributed; that the stranding at Salem was upon soft mud; that there was no hard substance there, by which a vessel, especially one of the model of the George, would be injured; that the brig did not leak on her outward voyage, as she would have done had the injury been recent; that she carried her cargo well, first to Pernambuco, then to Bahia and to Rio; and they contended, upon the evidence, that the damage could not have been done in Salem harbor, on the occasion mentioned.

A motion is made to set aside the verdict as against the weight of the evidence. Upon this point, having gone over all the evidence with some care, we should be strongly inclined to think this verdict against the weight of the evidence; but according to the established rule upon that subject, where there is conflicting evidence, the court are always disinclined to interfere, unless there is a pretty strong preponderance of evidence against the verdict. We think, however, that the court are under no necessity of giving an opinion on that subject.

There is another ground on which the defendants move to set aside the verdict, which is, that even if the disaster did occur after the policy attached and the risk commenced, still the plain tiff was not entitled to recover for a total loss, and therefore that the verdict, which was for a total loss, was against the evidence.

In the present case, it is very clear that there was no actual total loss by the alleged accident. The brig was not sunk, nor driven on shore or on rocks, so as to be incapable of being got off. She not only remained *in specie,* but actually carried a cargo from the United States to Brazil, and from port to port in Brazil, and was actually taking in a cargo for her return voyage, when the defect was observed, which led to further examination, and to her ultimate condemnation.

Nor was she at a place where repairs could not be had. She was at Rio Janeiro, one of the largest ports in Brazil, where labor and materials, and all the means of making repairs, are to be had ; although, according to the testimony, they would cost one third more than in the United States.

Another material consideration is, that in this case there was no abandonment ; and the cause proceeded, on both sides, upon that ground.

It is always optional with the assured, whether or not they will abandon in case of a constructive total loss. If they do not, the ship, and all profits and benefits of salvage, remain to the owners in the same manner as if the damage were not one half, and did not amount to a constructive total loss ; and the assured will be entitled to recover, for a partial loss, an indemnity to the amount of the actual damage suffered, which may exceed 50 per cent. and amount to any sum short of a total loss. But where there is only a constructive total loss, the assured cannot recover for a total loss, without an abandonment. *Peirce v. Ocean Ins. Co.* 18 Pick. 91. Even where, as in the present case, the vessel was broken up and sold — and that in a stronger case than the present, because it was a place where the vessel could not be repaired — it was held that the plaintiffs could not recover for a total loss, without abandonment. *Bell* v. *Nixon,* Holt N. P. 423. The general doctrine is laid down, and the

reason assigned, namely, that although it appears probable that the expenses of repairs may absorb the value of the vessel insured, yet the assured, if they mean to throw the risk on the underwriters, ought to give notice of abandonment, to enable the underwriters to elect whether they will incur the risk of the repairs. *Martin* v. *Crokatt,* 14 East, 465.

In the case of *Idle* v. *Royal Exchange Assurance Co.* 8 Taunt 755, and 3 Moore, 115, the vessel was on the rocks, in a dangerous tide-way below Quebec, late in the season, and in that condition was sold. It was held that the jury were justified in finding the sale necessary. The insurance was on freight ; no freight had been earned ; and after a justifiable sale of the vessel, by which she had gone into other hands, no freight could be earned to the assured, and then it was an actual total loss, and there was nothing to abandon.

In *Read* v. *Bonham,* 3 Brod. & Bing. 147, the case was, that the ship put back to Calcutta much damaged, and though the estimate of repairs did not amount to the value of the ship, yet it was found that the master had no funds, and no means of raising funds ; and besides, the case was decided on the ground that there was a seasonable abandonment. In *Cambridge* v. *Anderton,* 4 Dowl. & Ryl. 203, and 2 Barn. & Cres. 691, the case of *Read* v. *Bonham* is cited as an authority, that when a vessel becomes a wreck, and is sold, there may be a recovery for a total loss without abandonment. But the case itself, it is believed, does not warrant this position. But this case of *Cambridge* v. *Anderton* is an authority for another position, namely, that the assured cannot recover for a total loss without abandonment, when the vessel is reparable at an expense less than her value when repaired. When a vessel is not thus reparable, the loss may well be regarded as total ; because laying out expense, to more than the value of the vessel when repaired, would be increasing a loss, instead of saving any thing out of the wreck.

But the subject has undergone an elaborate discussion in a recent case, *Roux* v. *Salvador,* 1 Bing. N. R. 526, and 1 Scott, 491, in which, after a full review of the cases, it was held, that even when the property insured has been sold, and the news of

the sale arrived as soon as that of the loss, and where there was a total loss within the policy, but not an actual total loss by the destruction of the thing itself, there could not be a recovery for a total loss, without abandonment; and this is well supported in principle, as well as by authorities.

An abandonment changes the character of the master. It relates back to the time of loss; and as the master is authorized to labor, &c., in saving, for the benefit of all concerned, if there has not been an abandonment he is the agent of the owners and assured, and if he receives money, it is for their account; if he squanders it or wastes it, it is their loss. But if there has been an abandonment on good grounds, it relates back, and makes the master the agent of the underwriters from the time of the loss, so that if the salvage has been squandered, it is their loss. Here, if there had been an abandonment, we are not prepared to say that the plaintiff might not have recovered for a total loss. If the repairs would cost more than half the value, computed as stated in the policy, it was a constructive total loss, which would entitle the plaintiff to abandon and then recover for a total loss. But this was not relied on, and the evidence was not submitted to the jury upon that ground.

As the evidence stands, there was no ground to contend that the brig could not have been repaired, at a cost less than her value as stated in the policy. The highest estimate did not amount to $7000, after deducting for the copper on the brig.

If this were considered a total loss, with benefit of salvage, it is still, in effect, only a partial loss. The master being the agent of the assured, and they having made no abandonment, the money for the salvage, in his hands, is their money, and he being their agent, they were responsible for it, whether paid over or not. Then what is the loss? There is no difference between adjustment as a partial loss, and adjustment of a total loss with benefit of salvage. See *Gordon* v. *Massachusetts F. & M. Ins. Co.* 2 Pick. 261.

If the vessel, being entire, were sunk and gone, the whole valuation is the measure of the indemnity to the assured. But if any boats or materials have been saved and sold, the money ·

is that of the assured, and renders his loss so much less; so that it only remains to put down the valuation on one side, and deduct the money thus received, and the balance is the actual indemnity. The salvage, then, is not a set-off, not something belonging to the defendants, to be used to balance the plaintiff's total demand; but it is a sum belonging to the plaintiff, in his own hands, which diminishes his demand *pro tanto*, and to the same extent diminishes the amount he is entitled to recover. In this case, the whole of the proof went on the ground that there was considerable salvage, from the sale of the materials of the brig, particularly the copper. It was therefore the duty of the plaintiff to state the amount and deduct it, and his taking a verdict for the whole amount, without deduction, was clearly erroneous. If this were the only error, perhaps it might be corrected without opening the whole case. But we are of opinion that this is not a case where there can be a recovery for a total loss, without abandonment, because the brig remained *in specie* and might have been repaired; and there ought to have been an abandonment, to enable the underwriters to make the most of the property and the proceeds, at their election.

*Verdict set aside, and a new trial granted*